*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0199p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

DARRELL EVERSOLE,

*Defendant-Appellant.*

No. 06-5215

>

---

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 05-00034—Danny C. Reeves, District Judge.

Argued: April 18, 2007

Decided and Filed: May 31, 2007

Before: MERRITT and GRIFFIN, Circuit Judges; LAWSON, District Judge.[*]

---

## COUNSEL

**ARGUED:** Michael M. Losavio, Louisville, Kentucky, for Appellant. Andrew Sparks, ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Appellee. **ON BRIEF:** Michael M. Losavio, Louisville, Kentucky, for Appellant. Andrew Sparks, ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Appellee.

LAWSON, D. J., delivered the opinion of the court, in which GRIFFIN, J., joined. MERRITT, J. (p. 11), delivered a separate dissenting opinion.

---

## OPINION

---

DAVID M. LAWSON, District Judge. Darrell Eversole, a 44-year-old resident of London, Kentucky, was sentenced to 27-¼ years (327 months) in prison for engaging in the life-endangering enterprise of making methamphetamine. That sentence is at the top end of the calculated Sentencing Guidelines range of 262 to 327 months as determined by the district court. Eversole appeals his sentence raising several technical challenges to the manner of calculating his offense level under the

---

[*] The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

United States Sentencing Guidelines. We reject the challenges to the offense level calculation. We also conclude that the district court did not rely on impermissible factors in formulating the sentence, which was both procedurally and substantively reasonable. Therefore, we will affirm the district court's sentencing decision.

I.

On January 15, 2004, Eversole was arrested while driving a stolen car on I-75 in Kentucky. The car contained seven tanks of anhydrous ammonia, and the tanks were leaking. Because this chemical is highly toxic, the police closed a portion of the freeway for three hours so the area could be decontaminated by a hazardous waste team. As traffic was backing up, a collision occurred that resulted in the death of one Roger Bramer, a 71-year-old man from Wyoming, Michigan. Eversole was taken into state custody but subsequently was released because an indictment was not returned within sixty days.

On February 6, 2005, the Laurel County, Kentucky Sheriff's Department and the United States Forest Service searched Eversole's residence in London, Kentucky where he lived with his wife and two minor children. The search revealed a large quantity of items used in the manufacture of methamphetamine. Eversole's wife acknowledged at the time that Eversole manufactured methamphetamine. The two children were removed from the premises and put in the custody of child protective services.

On April 28, 2005, Eversole was indicted for conspiracy to manufacture fifty grams or more of methamphetamine (Count 1); attempt to manufacture fifty grams or more of methamphetamine (Count 2); possession of a measurable quantity of pseudophedrine while knowing it would be used to manufacture methamphetamine (Count 3); and two counts of endangering human life while illegally manufacturing methamphetamine (Counts 4 and 5). On September 21, 2005, Eversole entered a plea of guilty to Counts one, four, and five. The other counts were dismissed.

Sentencing occurred on January 23, 2006. Working from the presentence investigation report, which used the 2005 version of the United States Sentencing Guidelines Manual, the district court calculated Eversole's offense level by first determining the level for each of the counts; then the court grouped the counts in the manner prescribed by U.S.S.G. § 3D1.2(c), which instructs courts to group "closely related counts," to determine the total punishment "[w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." With respect to the crime of conspiracy to manufacture fifty grams or more of methamphetamine, the court found that the base offense level was 34 because the defendant was accountable for more than 150 but less than 500 grams of actual methamphetamine. *See* U.S.S.G. § 2D1.1(c)(3) (the drug quantity table). The court added three levels under U.S.S.G. § 2D1.1(b)(6)(B) because the offense involved the manufacture of methamphetamine and created a risk of harm to human life, that is, the defendant's two children. The resulting offense level for that count was 37.

As to the endangering human life convictions, the court determined that the base offense level was 37 under U.S.S.G. § 2D1.10(a)(1), which calls for a level of "3 plus the offense level from the Drug Quantity Table." Three levels were added under U.S.S.G. § 2D1.10(b)(1)(A) because the offense involved methamphetamine. Because the resulting level was 40, these offenses yielded a higher level than count one, so they were used as the offense level under the grouping rules. *See* U.S.S.G. § 3D1.3(a). Three levels were deducted for acceptance of responsibility, yielding a net offense level of 37.

Eversole's prior criminal record earned him five criminal history points, placing him in criminal history category III. Entry of these values into the sentencing table produced a guidelines range of 262 to 327 months. Neither party objected to those calculations.

Next, the district court entertained allocution from Eversole and his attorney, the attorney for the government, and two of Eversole's daughters. The thrust of the defense presentations was that the defendant had done bad things, he was in great need of drug treatment due to the havoc methamphetamine has wrought on his life, and he has much to offer his family so he ought not be locked away in prison for the rest of his life. Defense counsel did not advocate for a specific sentence, nor did he argue that the sentence should fall at any particular point within the guidelines range.

Prior to announcing Eversole's sentence, the district court recounted the fact that a motorist had been killed as a result of the traffic pile-up on Interstate Route 75 precipitated by Eversole's arrest. It appears that the court's information came from newspaper accounts, as there is no discussion of those facts in the presentence report and the attorney for the government was not well versed in the facts of the incident. The court then observed:

> Now, if this were a civil case, I think the attorneys are familiar with the old case of [*Pen*]*noyer v. Neff* and how far you can take a negligence action to establish responsibility. This type of activity probably wouldn't even be sufficient to establish a viable negligence claim if a civil action were brought. But the reason I point this out is to, again, emphasize how the results of these drug activities that we see so often, we often think that, you know, well, they don't really harm anyone but the defendant or family members, which we've seen here today, those are the ones that are truly harmed and that truly suffer the consequences of these actions.

J.A. 88.

The court then articulated its rationale for the sentence as follows:

> Now, the factors that the Court has to consider in imposing a sentence first are the Guidelines. And in this particular case, of course, the guideline range is quite high. 262 to 327 months is the guideline range. The Court can, of course, impose a – can go outside the range because the Sentencing Guidelines are not binding on courts, but they are a factor to be considered.

> The other factors that the Court has to consider, of course, include the nature and the circumstances of the offense, which I have gone over, as well as the history and the characteristics of a particular defendant. None of those factors really bode well for Mr. Eversole. When confronted on the two occasions in which he was arrested, the first thing he did was attempt to flee, attempt to run. And of course on the second occasion of his arrest, he had a large quantity of chemicals and other materials to manufacture methamphetamine in the vicinity of some small children, leading to Counts 4 and 5 in this case. So at the time the offenses occurred, he certainly didn't have a lot of thought or consideration for other members of his family that are now appearing here on his behalf.

> In addition to those factors, of course, the Court has to consider the need for the sentence to reflect the seriousness, the true seriousness, of the offense, to promote respect for the law and to provide just punishment for the offense, as well as to afford an adequate deterrence for future criminal conduct and – and I'll underline this – to protect the public from future crimes of the defendant. Those appear to be the

primary factors that need to be considered in this particular case in determining what an appropriate sentence should be.

This is a case probably that would certainly justify a sentence outside the range, above the range, but considering that he does have a family that appears to care very much about him, more than probably he cares about himself, I'm going to stay within the sentencing range in this case. But I am going to sentence at the upper end of the range, because I believe that based on all the factors I've just outlined, that would be the appropriate sentence that should be imposed based on those factors that I have just gone through.

J.A. 88-90.

The court then sentenced Mr. Eversole to concurrent prison terms of 327 months on count one and 120 months on counts four and five, to be followed by five years of supervised release. Thereafter, defense counsel was asked if he had any objections to the sentence, to which he answered "no." The defendant filed a timely notice of appeal as to his sentence. He does not challenge his convictions.

## II.

The defendant challenges his sentence here on three grounds, none of which was raised in the district court. When a defendant fails to object contemporaneously to an alleged error before the district court, this court reviews the district court's decision for plain error. *United States v. Ely*, 468 F.3d 399, 401 (6th Cir. 2006); *United States v. Perry*, 438 F.3d 642, 651 (6th Cir. 2006) (citing Fed. R. Crim. P. 52(b)). "'To establish plain error, a defendant must show (1) that an error occurred in the district court; (2) that the error was plain, i.e., obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings.'" *United States v. Abboud*, 438 F.3d 554, 583 (6th Cir. 2006) (quoting *United States v. Wright*, 343 F.3d 849, 861 (6th Cir. 2003)). The touchstone of appellate sentence review, however, is reasonableness. *United States v. Booker*, 543 U.S. 220, 260-61 (2005). "Where a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *United States v. Richardson,* 437 F.3d 550, 554 (6th Cir. 2006). When no such arguments are raised, as here, "the record must still reflect that the district court considered the relevant sentencing factors provided in section 3553(a)." *Ely*, 468 F.3d at 404.

Two of the defendant's arguments on appeal relate to alleged Sentencing Guidelines calculation and application errors. The Sentencing Guidelines range and the manner of arriving at it remain relevant to our review even after *Booker*'s refocus on the factors in section 3553(a) to determine a reasonable sentence. "Even though the Supreme Court declared the guidelines advisory in *Booker,* we are still required to remand for resentencing if the district court misapplies the guidelines." *United States v. Duckro*, 466 F.3d 438, 444 (6th Cir. 2006) (citing 18 U.S.C. § 3742(f)).

## A.

The defendant argues first that his Sentencing Guidelines range was overstated because the district court engaged in double counting, which is inherent in the prescribed application of U.S.S.G. § 2D1.10. He believes that because section 2D1.10(a)(1) considers the involvement of methamphetamine in the offense as an enhancing factor via the drug quantity table, and section 2D1.10(b)(1)(A) requires an additional enhancement due to the involvement of methamphetamine

in the offense, impermissible double counting results in that a single circumstance leads to two different enhancements.

The Guidelines section that applies to counts four and five, which charged endangering human life while illegally manufacturing a controlled substance in violation of 21 U.S.C. § 858, is section 2D1.10, which states:

(a) Base Offense Level (Apply the greater):
(1) 3 plus the offense level from the Drug Quantity Table in § 2D1.1; or
(2) 20.
(b) Specific Offense Characteristics
(1) (Apply the greater):
(A) If the offense involved the manufacture of amphetamine or methamphetamine, increase by 3 levels. If the resulting offense is less than level 27, increase to level 27.
(B) If the offense (i) involved the manufacture of amphetamine or methamphetamine; and (ii) created a substantial risk of harm to the life of a minor or an incompetent, increase by 6 levels. If the resulting offense level is less than 30, increase to level 30.

U.S.S.G. § 2D1.10 (2005).

It is well established that "impermissible 'double counting' occurs when precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways." *United States v. Farrow*, 198 F.3d 179, 193 (6th Cir. 1999) (citing *United States v. Perkins*, 89 F.3d 303, 310 (6th Cir. 1996)). On the other hand, where separate enhancements "penalize distinct aspects" of the defendant's conduct, no double counting will be found. *United States v. Perkins*, 89 F.3d 303, 307-10 (6th Cir. 1996). For example, "where a defendant is convicted of transporting stolen firearms as well as being a felon in possession of firearms for the same act of possession, it would be double counting to apply an enhancement for stolen firearms to the felon in possession count." *Duckro*, 466 F.3d at 445. That is because where "a single aspect of the defendant's conduct both determines his offense level and triggers an enhancement," double counting may occur. *Farrow*, 198 F.3d at 193. But where a conceptually distinct kind of harm triggers an enhancement above the base offense level, no impermissible double counting results. Thus, "where a defendant brandishes a gun in a bank robbery and is convicted of the bank robbery, an enhancement for brandishing the gun is appropriate if he is not separately convicted for the use of a gun in a crime of violence, under 18 U.S.C. § 924(c)." *Duckro*, 466 F.3d at 445.

A determination of double counting alone will not invalidate a sentence, however, because "our precedents show that not all instances of double counting are impermissible. . . . [T]the Sentencing Guidelines expressly mandate double counting under some circumstances through the cumulative application of sentencing adjustments." *Farrow*, 198 F.3d at 194. To determine if *impermissible* double counting occurs, we must examine both the text and context of the relevant Sentencing Guidelines provisions.

In the present case, the defendant's base offense level was determined in part by the drug quantity table, which takes into consideration both the type and quantity of the illegal controlled substance involved. Eversole was held accountable for 448.1 grams of actual methamphetamine, falling within U.S.S.G. § 2D1.1(c)(3), which prescribed an offense level of 34 for quantities of actual methamphetamine between 150 and 500 grams. Coincidently, that same level would apply to the same quantity of cocaine base. Under the endangerment guideline, three levels are added to arrive at a base level of 37. Eversole objects to the addition of three more levels authorized by the guidelines when "the offense involved the manufacture of . . . methamphetamine." U.S.S.G.

§ 2D1.10(b)(1)(A). He says the fact that the drug happened to be methamphetamine determined both the base level and the enhancement.

That same argument was considered and rejected by the Eighth Circuit in *United States v. Fortney*, 357 F.3d 818 (8th Cir. 2004). There, like here, the defendant was charged with both conspiracy to manufacture methamphetamine and endangerment, and his offenses were grouped based on the most serious offense under the Sentencing Guidelines. The conspiracy offense level included an enhancement for endangerment under U.S.S.G. 2D1.1(b)(6)(B) ("If the offense (i) involved the manufacture of amphetamine or methamphetamine; and (ii) created a substantial risk of harm to (I) human life other than a life described in subdivision (C); or (II) the environment, increase by **3** levels."). The court reasoned that no double counting occurred in the determination of the base offense level for the endangerment count because "only the *base* offense level from the Drug Quantity Table in § 2D1.1 was incorporated by reference into the base offense level for his endangering count in § 2D1.10(a)(1)." *Fortney*, 357 F.3d at 822. Turning to the question whether adding another three levels because the drug in question was methamphetamine impermissibly double counted that factor, the court held:

> As for the three-level increase imposed under § 2D1.10(b)(1)(A), Congress directed the Commission to adopt a separate increase for endangering that is caused by the manufacture of methamphetamine, and the Commission implemented this mandate in Amendment 608. It is not double counting when the Guidelines impose cumulative enhancements that reflect "conceptually separate notions relating to sentencing," as § 2D1.10(a)(1) and § 2D1.10(b)(1)(A) do.

*Ibid.*

We believe this reasoning is consistent with this Circuit's precedents. Congress defined endangering human life while manufacturing or transporting illegal drugs or chemicals as a discrete offense. *See* 21 U.S.C. § 858. That offense does not apply only to methamphetamine, and the base offense level is derived from factors in addition to drug type, namely quantity. The same quantity of another drug – cocaine base – would yield the same base offense level. However, Congress directed the Sentencing Commission to include an enhancement specifically for methamphetamine involvement in crimes of manufacturing and endangerment. *See* Methamphetamine and Club Drug Anti-Proliferation Act of 2000, Pub. L. 106-878. That enhancement, incorporated in Amendment 608, U.S.S.G. App. C (Supp. 2002), addresses the unique harm caused by manufacturing methamphetamine, which Congress determined was greater than with other drugs. *See* H.R. Rep. No. 106-878, at 22 (finding that "[t]he methamphetamine epidemic in America differs in kind from the threat of other illegal drugs because methamphetamine can be made from readily available and legal chemicals and substances, and because it poses serious dangers to both human life and to the environment. Additionally, these chemicals and substances are utilized in a manufacturing process that is unstable, volatile, and highly combustible. Even small amounts of these chemicals, when mixed improperly, can cause explosions and fires. For every one pound of methamphetamine that is produced, approximately five pounds of toxic and often lethal waste products may be left behind at the laboratory site, or disposed of in rivers, kitchen sinks, or sewage systems in an effort to conceal evidence of illegal manufacturing"). Because the enhancement addresses a conceptually distinct harm not necessarily taken into account by the base offense level, *Perkins*, 89 F.3d at 307, and the enhancement is specifically authorized by the Sentencing Commission following a congressional directive, *Farrow*, 198 F.3d at 194, we conclude that no impermissible double counting occurred.

The district court did not err in applying the challenged Sentencing Guidelines provision; therefore, we need not proceed beyond the first step in the plain error analysis with respect to this claim of error.

B.

The defendant next argues that the district court incorrectly grouped the offenses when determining the total offense level. He contends that the district court violated U.S.S.G. § 3D1.3's command that, when closely related counts are grouped together for sentencing purposes, the offense level applicable to the most serious of the counts comprising the group controls. Because the conspiracy charge in count one carried a maximum penalty of life in prison, and the endangerment charges in counts four and five prescribed maximum penalties of ten years each, Eversole believes that the offense level for the conspiracy charge (level 37) should have predominated over the offense level for the endangerment counts (level 40). He cites *United States v. Brinton*, 139 F.3d 718 (9th Cir. 1998), in support of this argument and asserts that case stands for the proposition that courts grouping offenses for sentencing purposes must look to the crime with the highest statutory maximum, not the highest offense level.

We must reject the defendant's argument because it contravenes the plain language of the applicable Sentencing Guidelines provisions. We also read *Brinton* differently than the defendant.

Eversole's crimes were grouped together for sentencing purposes as closely related counts under U.S.S.G. § 3D1.2(c), which states:

> All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:
>
> . . .
>
> (c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.

U.S.S.G. § 3D1.2.

Section 3D1.3 instructs courts how to determine the offense level applicable to a group of closely related counts. That Guideline provides:

> (a) In the case of counts grouped together pursuant to § 3D1.2(a)-(c), the offense level applicable to a Group is the offense level, determined in accordance with Chapter Two and Parts A, B, and C of Chapter Three, for the most serious of the counts comprising the Group, i.e., *the highest offense level of the counts in the Group.*

U.S.S.G. § 3D1.3(a) (emphasis added).

Eversole pleaded guilty to conspiracy to manufacture fifty grams or more of methamphetamine, 21 U.S.C. § 846, and endangering human life while illegally manufacturing methamphetamine, 21 U.S.C. § 858. The conspiracy count carried a statutory sentence of ten years to life imprisonment, *see* 21 U.S.C. §§ 841(b)(1)(A), 846, but a base offense level of 34. The endangerment counts, on the other hand, carried a statutory maximum of ten years imprisonment, *see* 21 U.S.C. § 858, and a base offense level of 37. Section 3D1.3(a) of the Sentencing Guidelines plainly states that the court should look to the highest offense level, not the greatest statutory penalty, to determine the controlling offense level among the offenses within the group. That is what the district court did.

*United States v. Brinton* does not compel a different result. The court in that case was not confronted with the task of choosing between the statutory maximum sentence and the higher of two Sentencing Guidelines ranges to determine the "most serious of the counts comprising the Group," as required by U.S.S.G. § 3D1.3(a). That argument was not even raised on appeal. In that case, Brinton was convicted of manufacturing methamphetamine and endangerment. In discussing the calculation of Brinton's offense level, the court observed that manufacturing methamphetamine carried a potential life sentence and the endangerment count was capped at ten years. It then observed that "since the [manufacturing counts] have the potential to produce the highest offense level, the group offense level should be determined under the guideline applicable to those offenses." *Brinton*, 139 F.3d at 722. The court did not calculate the respective offense levels, however; nor did it explicitly hold that the "seriousness" determination is controlled by the statutory maximum sentence.

But if one reads the *Brinton* court's *dictum* as tacitly holding that the count with the "highest offense level" for purposes of U.S.S.G. § 3D1.3 is the count with the highest statutory sentence, we must reject that interpretation for two reasons in addition to its departure from the Sentencing Guideline's plain language. First, although the statutory maximum sentence certainly will limit the length of a prison term and may even cabin the guideline range, *see* U.S.S.G. § 5G1.1(a), (c)(1) (providing that when the statutory maximum is less than the low end of the guideline range, "the statutorily authorized maximum sentence shall be the guideline sentence"; and in other cases any sentence within the range may be imposed as long as it "is not greater than the statutorily authorized maximum sentence"), it is not the same as nor does it affect the offense level. The offense level is determined by manifold other factors. The statutory maximum sentence is brought to bear on the process afterward.

Second, the statutory maximum sentence on a given count of conviction does not necessarily limit the total sentence. Rather, under the Sentencing Guidelines schema, "[i]f the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment." U.S.S.G. § 5G1.2(d). Of course, after *Booker*, this provision is no longer mandatory, but a sentence consistent with it carries a badge of reasonableness we are bound to consider. *See United States v. Ward*, 447 F.3d 869, 871 (6th Cir. 2006) (stating that "a sentence that falls within the advisory Guidelines range is given a rebuttable presumption of reasonableness") (internal quotes omitted); *c.f. United States v. Spano*, 476 F.3d 476, 478 (7th Cir. 2007) (stating that "[e]ven though the guidelines are no longer mandatory, the judge must compute the guidelines range [using U.S.S.G. 5G1.2(d)]. He is not bound to sentence within it, but if he does the sentence is presumed by us (that is, by the appellate court) to be reasonable"). The point is that the statutory maximum penalty and the offense level perform different roles in the sentencing process, and they ought not be confounded.

In addition, both the Eighth and Tenth Circuits have squarely rejected the defendant's interpretation. *United States v. Kroeger*, 229 F.3d 700, 703-04 (8th Cir. 2000) ("reject[ing] Kroeger's argument, and the Ninth Circuit's approach, because both rest on an erroneous understanding of the Guidelines. . . . [T]he most serious count is not the count with the greatest available maximum statutory term of imprisonment; it is the count with the highest offense level"); *United States v. Evans*, 318 F.3d 1011, 1020 (10th Cir. 2003) (same).

We hold, therefore, that when grouping offenses under U.S.S.G. § 3D1.3, the "most serious" offense shall be determined by looking to the offense levels of the competing counts within the group, not the statutory maximum penalties for the counts of conviction.

C.

The defendant's third argument does not implicate the Sentencing Guidelines, but focuses on the facts considered by the district court in formulating its specific sentence. He complains that the district court erroneously considered Mr. Bramer's death, as evidenced by the discussion of the event on the record, which calls into question the propriety of the court's decision to sentence the defendant at the high end of the guidelines range. To the extent the district court considered Mr. Bremer's death to justify a harsher sentence, Eversole contends this is plain error because Eversole clearly was not the legal cause of this tragedy. He contends, therefore, that his sentence was unreasonable.

The government counters with the argument that Eversole's sentence was within the guidelines range and therefore entitled to a presumption of reasonableness. According to the government, the mere fact that the court mentioned the accident and death is not enough to overcome the presumption of reasonableness.

We agree that a sentence "properly calculated under the Guidelines [carries] a rebuttable presumption of reasonableness." *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006). The court of appeals assesses the reasonableness of a sentence against the factors set forth in 18 U.S.C. § 3553(a) and in light of Congress's prime directive that sentences must be "sufficient, but not greater than necessary, to comply with the purposes set forth" therein. *United States v. Bridgewater*, 479 F.3d 439, 441 (6th Cir. 2007). The problem with the government's argument is that the guideline range in this case was rather vast – nearly five-and-a-half years (65 months) – and it is not readily apparent to us after carefully reading the record why a 27-year sentence for this forty-two-year-old offender achieves the congressionally-mandated goals any better than a 22-year sentence would. If the lower sentence satisfies the statute, then any longer sentence would be greater than necessary to comply with the congressional purpose. Whether that factor justifies vacating the sentence, however, turns on our assessment of the sentence's reasonableness in light of the legislation and applicable precedent.

Congress has stated that when the guideline range exceeds 24 months, the sentencing judge must "state in open court the reasons for its imposition of the particular sentence," including "the reason for imposing a sentence at a particular point within the range." 18 U.S.C. § 3553(c)(1). The district court here technically complied with that provision, stating, "I am going to sentence at the upper end of the range, because I believe that based on all the factors I've just outlined, that would be the appropriate sentence that should be imposed." J.A. 90. However, the "factors . . . outlined" by the district court included only those in section 3553(a) plus the circumstances of the motorist's death.

Among the factors listed in section 3553(a) are "the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). The fact of the motorist's death was a circumstance connected to the crime, albeit tenuously, and there was no impropriety in the sentencing court's discussion of it. The district court did not state that it was enhancing the defendant's sentence based on that fact, and the sequence of the court's discussion suggests that it did not calculate Mr. Bramer's death into the sentence. The court mentioned the death after engaging in a colloquy with Eversole's daughters, who, although acknowledging that their father should be punished and his drug use adversely affected their family, implored the court to show mercy. The court then discussed Mr. Bramer's death "to make sure that everyone here understands that there are other consequences that flow from these drug crimes." J.A. 83. In other words, the court was impressing upon Eversole that he and his family were not the only immediate or remote victims of Eversole's actions. The court recognized that the defendant's role in causing Bramer's death "probably wouldn't even be sufficient to establish a viable negligence claim if a civil action were brought," J.A. 88, mistakenly referring to the case of *Pennoyer v. Neff* (which is an old civil procedure chestnut dealing with

personal jurisdiction, not proximate cause; the court probably intended to refer to *Palsgraff v. Long Island R.R. Co.,* 162 N.E. 99, 100 (N.Y. 1928)). Thereafter, the court never revisited the fact of Mr. Bramer's death, although it discussed the other circumstances that informed Eversole's sentence (e.g., his attempts to evade arrest).

The record shows that the district court was aware of its obligation to consider all of the factors in section 3553(a), and it even enumerated them. The court's discussion of its choice at the top of the guideline range was truncated, but this court does not require "a ritualistic incantation of the § 3553(a) factors it considers," *United States v. Chandler*, 419 F.3d 484, 488 (6th Cir. 2005) (internal quotes omitted), or any other specific treatment of its statutory choices. Moreover, the defendant did not raise – even on appeal – the question of compliance with section 3553(c), and this court has held that the failure of a district court to follow that statute generally will not amount to plain error because proof that it affects the defendant's substantial rights is difficult. *United States v. Hernandez*, 2007 WL 128771 (6th Cir. Jan. 17, 2007) (unpublished). It is clear that the lower court touched all the bases and that its sentence was procedurally reasonable.

Therefore, to vacate Eversole's sentence on the present record, we must be convinced that the sentence was substantively unreasonable. "A sentence may be considered substantively unreasonable when the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006) (internal quotes, alterations, and citations omitted). The task of formulating a specific sentence is committed to the discretion of the district court. An appellate panel's belief that a particular sentence is too harsh or too lenient alone will not support a finding of substantive unreasonableness.

Although the sentence in this case may seem to us to be greater than necessary to fulfill the statutory goals, given Eversole's age, the nature of the crime, his criminal record, and the other section 3553(a) factors, we cannot conclude that the sentence was substantively unreasonable. The record does not show that the district court made its choice arbitrarily, ignored or over-rated any of the pertinent factors, or based its sentence on impermissible factors, such as holding the defendant legally accountable for the motorist's death. The failure of the defendant to object contributes to this conclusion; we cannot find that the district court's sentencing choice at the top of the properly calculated guideline range amounted to plain error. The review function and authority of the court of appeals does not extend simply to second-guessing the sentencing decisions of the district courts.

III.

We conclude that no impermissible double counting occurred in calculating the offense level in this case, the counts of conviction were properly grouped under the Sentencing Guidelines, and the sentence was not based on an impermissible factor. Because we conclude that the defendant's sentence was procedurally and substantively reasonable, the defendant's sentence is **affirmed.**

---

**DISSENT**

---

MERRITT, Circuit Judge, dissenting. The crime was caused by the defendant's addiction to methamphetamine, as the district court suggests and the record makes clear. I regard a sentence of almost 30 years for this 44-year-old man as an unreasonable life sentence, and I would require that the sentence be reduced to a level that considers how long it will take to rehabilitate this man's addiction. The District Court should take expert proof and give him a sentence "not greater than necessary" to cure his addiction by providing the defendant with "needed medical care, or other correctional treatment" as required by the mandatory federal statutory rules for the "Imposition of Sentence" for federal crimes, as codified in 18 U.S.C. § 3553(a)(2)(D). In my view this is the kind of rehabilitative analysis that *United States v. Booker*, 343 U.S. 220 (2005), requires after *Booker* rendered the Sentencing Guidelines merely discretionary. Federal courts should take seriously the language of the statute and should place its rehabilitative rules above those Guidelines that do not allow such an analysis. The sentencing courts should forget about the Guidelines when they conflict with the clear statutory rules. It is clear that the statutory rule limiting punishment to a sentence "not greater than necessary," combined with the language of rehabilitation contemplating "medical care or other correctional treatment" has been cast aside and not even considered in this case. I would require that these rules be strictly observed and that any Guidelines that do not take this language into account be set aside in the sentencing process.

This view is reinforced by the most intelligent, scholarly discussion of criminal responsibility for addiction that I have read, Stephen J. Morse, *Addiction, Genetics and Criminal Responsibility*, 69 Law & Contemp. Prob. 165, 205 (2006), who concludes as follows: "Finally, although the criminal justice system might play a useful role in responding to addiction-related action, non-criminal, non-judgmental interventions also should play a substantial role. The criminal justice system response should be limited and reformed to enhance the potential efficacy of treatment approaches." The statute's "not greater than necessary" rule combined with medical treatment of addiction requires that sentencing judges take into account mitigators like addiction.

The Guidelines violate § 3553 by forbidding consideration of addiction and most other significant mitigators. Part H of the Guidelines on "Specific Offender Characteristics" states that "Drug or alcohol dependence or abuse is not a reason for a downward departure" and forbids consideration in the sentencing process. (§ 5H1.4.) Part H states the same thing for many other mitigators — for example, "mental and emotional conditions" such as organic brain damages or low levels of serotonin (§ 5H1.3), youth or old age (§ 5H1.1), and "family responsibilities" such as a parent's need to care for minor children (§ 5H1.6). Part H does not permit the consideration of any mitigators when assessing "Specific Offender Characteristics." It is ironic that the Sentencing Commission thinks that juries are capable of taking mitigators into account but judges are not. In other areas of analysis of criminal responsibility — for example, death penalty jurisprudence — the Constitution forbids the use of a sentencing process that proscribes the consideration of addiction and other mitigators by the sentencer. *Lockett v. Ohio*, 438 U.S. 586 (1978) ("The Ohio death penalty statute does not permit the type of individualized consideration of mitigating factors we now hold to be required by the Eighth and Fourteenth Amendments"). Therefore, in a case like this, the Guidelines are not a reliable or even a rational guide to sentencing. If the federal judiciary is to impose just sentences after *Booker*, it must extricate itself from the prevailing mind set under the Guidelines that includes almost all conceivable enhancements and aggravators while excluding from consideration almost all significant mitigating circumstances.