RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0195p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JERMAINE DESHAWN CLARK,

*Defendant-Appellant*.

┐
│
│
├ No. 20-1887
│
│
┘

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:19-cr-00234-1—Paul Lewis Maloney, District Judge.

Argued: July 20, 2021

Decided and Filed: August 26, 2021

Before: BOGGS, CLAY, and WHITE, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Michael R. Bartish, SPRINGSTEAD BARTISH BORGULA & LYNCH, PLLC, Grand Rapids, Michigan, for Appellant. Timothy P. VerHey, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Michael R. Bartish, Laura J. Helderop, SPRINGSTEAD BARTISH BORGULA & LYNCH, PLLC, Grand Rapids, Michigan, for Appellant. Timothy P. VerHey, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

---

**OPINION**

---

CLAY, Circuit Judge.   Defendant Jermaine Clark appeals the sentence entered by the district court after he pleaded guilty to two bank robbery counts, in violation of 18 U.S.C. § 2113(a).  For the reasons stated below, we **VACATE** Clark's sentence and **REMAND** the case to the district court for resentencing.

## I.  BACKGROUND

### A.  Factual Background

On June 29, 2019, Clark entered a Chase Bank in Lansing, Michigan, approached the bank teller, and handed her a note stating, "This is a robbery.  I have a gun." (R. 55 at PageID# 134.)  He walked out of the bank with $2,910.  Because Clark did not wear a mask or gloves, the bank teller was able to provide police with a physical description and show them surfaces that could be dusted for fingerprints.

Two weeks later, on July 13, 2019, Clark robbed a PNC Bank in Kalamazoo, Michigan. He approached a bank teller and handed her a note demanding $7,500.  He also informed her that he had a gun.  Clark left the bank with $2,041.

Over the next few days, police received three different tips identifying Clark as the perpetrator of the July 13 Kalamazoo robbery.  One of the tips identified a white Dodge Charger as Clark's vehicle.  After learning that a Dodge Charger rented by Clark's girlfriend, Tammy Thompson, had been stolen, FBI Special Agents interviewed Thompson on July 17, 2019. Thompson identified Clark in surveillance video from the two bank robberies.  She also told the agents that she had not seen Clark since he took her rented Dodge Charger on the day of the Kalamazoo bank robbery.

On July 22, 2019, a criminal complaint and warrant were issued charging Clark with the Lansing and Kalamazoo bank robberies.  The FBI's search warrant allowed them to ping the location of the Dodge Charger and Clark's cell phone.

Two days later, on July 24, 2019, Clark's phone showed that he was in Columbus, Ohio. Later that day, Clark robbed a PNC Bank in Mason, Ohio. He entered the bank, handed the teller a note informing her that he was robbing the bank and that he had a weapon, and told her, "Don't test me." (R. 55 at PageID# 135.) Clark left the bank with $2,508. Witnesses at the scene told police that the bank robber had left the scene in a white Dodge Charger. When police entered this information into a law enforcement intelligence bulletin, the FBI informed them about their pursuit of Clark. The FBI also told the Mason police that Clark's phone was currently showing him to be in Florence, Kentucky.

Florence police were then dispatched to locate Clark. They found him in the stolen white Dodge Charger leaving a gas station and attempted to conduct a traffic stop. However, Clark sought to evade the police. He accelerated onto the highway and reached a speed of 140 miles per hour. Eventually, Clark tried to exit the highway. But his unsafe speed caused him to hit two other cars. A 67-year-old in one of the cars suffered significant injuries, including ten bone fractures, a collapsed lung, a head injury, and extensive bruising. Clark (and a passenger) fled the accident on foot. Police quickly caught up to Clark and arrested him.

In several interviews with law enforcement, Clark provided significant information. He admitted to stealing the Dodge Charger, to robbing the banks in Lansing, Kalamazoo, and Mason, and to using the stolen Dodge Charger for his bank robberies. He also informed law enforcement about several other bank robberies that he had committed.

## B. Procedural Background

On September 24, 2019, Clark was indicted on two counts of bank robbery, in violation of 18 U.S.C. § 2113(a). Specifically, he was charged for the June 29, 2019, Lansing bank robbery and the July 13, 2019, Kalamazoo bank robbery. On December 20, 2019, Clark pleaded guilty pursuant to a plea agreement.

Although Clark was not charged for the July 24, 2019, Ohio bank robbery, Clark admitted in the plea agreement to committing that robbery, and "[t]he parties agree[d] the Court should consider this additional robbery in fashioning the appropriate sentence under the federal sentencing guidelines, 18 U.S.C. § 3553, and all applicable statutes bearing upon restitution, as if

he entered a guilty plea to this robbery." (R. 35 at PageID# 74.) In return, the government agreed not to bring additional charges against Clark for the Ohio bank robbery.

Based on the terms of the plea agreement, the presentence report included the Ohio robbery as a "Pseudo Count" for purposes of calculating Clark's sentencing range. Relevant to this appeal, for each of the three bank robberies, the presentence report assessed enhancements for a victim sustaining life-threatening bodily injury during the car chase and for Clark recklessly creating a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer.

Clark objected to the presentence report's computation of his Guidelines sentencing range. He argued that the enhancements should only apply to the Pseudo Count because applying these enhancements to all three counts would constitute unlawful "triple counting," and because there was an insufficient nexus linking the flight in Kentucky to the two Michigan bank robberies. (R. 56 at PageID# 169.) However, at Clark's sentencing hearing, the district court overruled these objections. The district court then sentenced Clark to a total of 235 months of imprisonment—the maximum sentence within Clark's advisory Guidelines range, as calculated by the district court.

This timely appeal followed.

## II. DISCUSSION

On appeal, Clark challenges the district court's decision to overrule his triple counting and nexus objections to the presentence report.[1] "We review *de novo* a district court's legal interpretation of the Sentencing Guidelines, and we review for clear error a district court's factual conclusions." *United States v. Flores*, 974 F.3d 763, 765 (6th Cir. 2020) (citing *United States v. Thomas*, 933 F.3d 605, 608 (6th Cir. 2019)). Thus, we review *de novo* a district court's legal conclusion that no impermissible double (or triple) counting occurred. *See United States v.*

---

[1]Because we reverse the district court's double counting determination and hold that it is only permissible to apply the challenged enhancements to one of Clark's three bank robbery counts, we do not address whether there was a sufficient nexus between the Kentucky car chase and Clark's two Michigan bank robberies. Beyond our double counting holding, the district court is not bound in its resentencing.

*Farrow*, 198 F.3d 179, 188 (6th Cir. 1999); *see also United States v. Volkman*, 797 F.3d 377, 399 (6th Cir. 2015).

"The [United States Sentencing] Guidelines provide explicit and unambiguous application instructions: First, find the appropriate offense conduct guideline in Chapter Two; second, apply any appropriate specific offense characteristics contained in the offense conduct guideline in Chapter Two; third, apply any appropriate adjustments from Chapter Three; fourth, repeat the first three steps for each count in a multiple count conviction and then apply the grouping guidelines in Chapter Three." *United States v. Young*, 266 F.3d 468, 484 (6th Cir. 2001) (citing USSG § 1B1.1(a)(1)-(4)). The grouping guidelines "provide[] rules for determining a single offense level that encompasses all the counts of which the defendant is convicted." USSG Ch.3, pt.D, intro. comment. "When a defendant has been convicted of more than one count," the grouping guidelines instruct that "the court shall":

> (1) Group the counts resulting in conviction into distinct Groups of Closely Related Counts ("Groups") by applying the rules specified in § 3D1.2.
>
> (2) Determine the offense level applicable to each Group by applying the rules specified in § 3D1.3.
>
> (3) Determine the combined offense level applicable to all Groups taken together by applying the rules specified in § 3D1.4.

*Id.* § 3D1.1(a). After applying "the adjustment as appropriate for the defendant's acceptance of responsibility," *id.* § 1B1.1(a)(5), and determining "the defendant's criminal history category," *id.* § 1B1.1(a)(6), the court uses "the combined offense level to determine the appropriate sentence in accordance with the provisions of Chapter Five." *Id.* § 3D1.5.

The district court determined that an offense involving robbery has a base offense level of 20. *See id.* § 2B3.1(a). It is undisputed that four levels were properly added to each count for enhancements that are unchallenged on appeal. Based on the Kentucky car chase, the district court then further increased the offense level for each of Clark's three robbery counts by two levels after applying a specific offense characteristic because Clark "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer," *id.* § 3C1.2, and another six levels after applying an adjustment because a victim sustained "permanent or life-threatening bodily injury," *id.* § 2B3.1(b)(3)(C).

Clark argues that applying these enhancements to all three counts constituted impermissible double (or triple) counting.

"It is well established that 'impermissible "double counting" occurs when precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways.'" *United States v. Eversole*, 487 F.3d 1024, 1030 (6th Cir. 2007) (quoting *Farrow*, 198 F.3d at 193). But although "this Circuit retains [a] dim view of double counting," *United States v. Smith*, 196 F.3d 676, 681 (6th Cir. 1999) (citing *United States v. Romano*, 970 F.2d 164, 167 (6th Cir. 1992)), "not all instances of double counting are impermissible," *United States v. Fleischer*, 971 F.3d 559, 570 (6th Cir. 2020) (quoting *Farrow*, 198 F.3d at 194). Specifically, this Court has recognized two situations where double counting is permissible: 1) where "the Sentencing Guidelines expressly mandate double counting . . . through the cumulative application of sentencing adjustments," and 2) "where it appears that Congress or the Sentencing Commission intended to attach multiple penalties to the same conduct." *Farrow*, 198 F.3d at 194.

"[W]e first determine whether double counting occurred." *United States v. Duke*, 870 F.3d 397, 404 (6th Cir. 2017). As a starting point, it is indisputable that "precisely the same [two] aspect[s] of [Clark's] conduct"—his reckless flight in Kentucky and his infliction of life-threatening injuries upon a victim during the flight—were each counted multiple times in the district court's calculation of his Guidelines sentencing range. *Eversole*, 487 F.3d at 1030 (quoting *Farrow*, 198 F.3d at 193). The same two aspects of his conduct occurring during the Kentucky car chase were used to trigger the application of same two enhancements to all three bank robbery counts.

But the first step of the double counting inquiry does not end here. Even when the same conduct is technically applied to multiple counts in the district court's calculation of a defendant's Guidelines sentencing range, double counting only occurs when the conduct actually "factors into [the defendant's] sentence" in multiple ways. *Eversole*, 487 F.3d at 1030 (quoting *Farrow*, 198 F.3d at 193); *see also Weinberger v. United States*, 268 F.3d 346, 353 (6th Cir. 2001) ("[W]e do not need to reach the issue of whether double counting occurred in this case because Weinberger's adjusted offense level would be the same regardless of whether the court

applied the" enhancement that was "the proposed source of the double counting."); *United States v. Boyer*, 536 F. App'x 539, 542 (6th Cir. 2013).

*United States v. Moon*, 513 F.3d 527 (6th Cir. 2008), is illustrative. In *Moon*, counts one through three charged the defendant with health care fraud, and count four charged her with making false statements to government agents. *See id.* at 533. At sentencing, the district court applied enhancements for the obstruction of justice to the three health care fraud counts—based on the same false statements made to government agents that formed the basis for count four. *See id.* at 534, 542. On appeal, the defendant argued that the enhancements constituted impermissible double counting. *See id.* at 542. We rejected the claim because "Defendant's specific conduct of lying to government agents did not factor into her sentence in two separate ways with respect to count four." *Id.* at 543.

The government argues that *Moon* forecloses Clark's argument because Clark's reckless endangerment during flight and his infliction of life-threatening bodily injuries upon a victim only factored into each count's offense level once. *See id.* But *Moon* is distinguishable in important ways from the facts presented here. In *Moon*, the four counts were grouped together, and that was dispositive. *See* 513 F.3d at 542. As explained above, when counts are grouped together, "the offense level applicable to a Group is the offense level . . . for the most serious of the counts comprising the Group, i.e., the highest offense level of the counts in the Group." USSG § 3D1.3(a). Therefore, applying the obstruction of justice enhancement to the three health care fraud counts in *Moon* did not risk the false statements factoring into the defendant's sentence multiple times because only one of the four grouped counts—the most serious one— was to provide the offense level for the group. *See id.* § 3D1.4. So long as none of the four counts comprising the group factored the false statements into the offense level multiple times, there could be no double counting. Accordingly, in *Moon*, because "[t]he misrepresentations made to the officers with respect to the health care fraud investigation" only factored into each count's offense level once, and the counts were grouped such that only the most serious offense level would determine the guidelines range, "the sentencing scheme utilized by the district court [did] not constitute impermissible double counting." *Moon*, 513 F.3d. at 542–43.

In contrast to *Moon*, the district court here adopted the presentence report's determination that Clark's counts could not be grouped together because the three bank robberies did not "involve[e] substantially the same harm"—Clark robbed three different banks, at three different times, and in three different locations.**²** USSG § 3D1.2. Because Clark's robbery counts were not grouped together, the district court had to determine a "combined offense level" for the three groups. *Id.* § 3D1.1. To do so, the district court had to "tak[e] the offense level applicable to the Group with the highest offense level," and assign one "Unit" to that group. *Id.* § 3D1.4. Since all three groups of Clark's counts had an offense level of 32, the choice of group did not matter. Because the other two groups had an "equally serious" offense level, the district court had to assign "one additional Unit for each Group." *Id.* § 3D1.4(a). The three total units required the district court to increase the offense level by three levels to 35. *See id.* Three levels were then reduced for Clark's acceptance of responsibility, bringing the total offense level down to 32. *See id.* § 3E1.1(a), (b). After determining that Clark had a criminal history category of V, based upon an adjusted total offense level of 32, Clark's Guidelines imprisonment range was calculated to be 188 to 235 months.

However, had the district court not triple counted the challenged enhancements, Clark's Guidelines range would have been lower. If the two level enhancement under § 3C1.2 and the six level enhancement under § 2B3.1(b)(3)(C) were only applied to one of the counts, say, the Pseudo Count for the Ohio bank robbery, the other two counts would have each had an offense level eight levels lower than scored by the district court. Under the grouping guidelines, "any Group that is 5 to 8 levels less serious than the Group with the highest offense level" is only counted "as one-half Unit." *Id.* § 3D1.4(b). Whereas the district court's triple counting resulted in three additional units, only applying the enhancements to one of the counts would have resulted in a total of only two additional units. *See id.* § 3D1.4. And for two units, the combined offense level is only increased by two. *See id.* Therefore, after taking into account a three level reduction for Clark's acceptance of responsibility, Clark's adjusted total offense level would have been 31. Accordingly, without triple counting, with a criminal history category of V, Clark's Guidelines range would have been reduced to 168 to 210 months of imprisonment.

---

**²**Clark has not challenged this determination.

*See id.* ch.5, pt.A.  In short, unlike in *Moon*, because Clark's three bank robbery counts were not grouped together, applying the challenged enhancements to all three counts meant that "precisely the same aspect[s] of [his] conduct factor[ed] into his sentence in [multiple] ways." *Eversole*, 487 F.3d at 1030 (quoting *Farrow*, 198 F.3d at 193).

Nonetheless, the government argues that there was no impermissible double counting "because [Clark] robbed not one but three banks, on different days and in different places," and, had he only robbed one bank, the enhancements under § 3C1.2 and § 2B3.1(b)(3)(C) would have each been applied only once.  (Appellee Br. at 19.)  According to the government, moreover, because "different facts . . . link[ed]" each of the three robberies to the Kentucky car chase, Clark's increase in sentence can be attributed to the differing conduct occurring during the various bank robberies.  (Oral Argument at 19:07–19:10.)  However, Clark challenges the increase in his sentencing range that was caused specifically by the application of § 3C1.2 and § 2B3.1(b)(3)(C) to each of his three robbery counts.  And precisely the same two aspects of Clark's conduct during his flight in Kentucky—his conduct that recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer and his conduct causing a victim to sustain permanent or life-threatening bodily injury—were the sole triggers of the same two enhancements that were applied to all three counts. Clark's other conduct occurring during the actual bank robberies did not trigger the enhancements, and accordingly, is irrelevant. Therefore, we hold that triple counting occurred.

After determining that double (or triple) counting occurred, "we determine whether any such double counting was impermissible." *Duke*, 870 F.3d at 404.  As an initial matter, there is no argument "that the Sentencing Guidelines expressly mandate double counting," *Farrow*, 198 F.3d at 194, in situations where, as here, multiple counts are grouped separately because they do not "involve[e] substantially the same harm," USSG § 3D1.2, but an enhancement based on the same conduct applies to all the groups.

But because Clark's counts were not eligible to be grouped together, the government appears to argue that the Sentencing Commission implicitly intended to allow double counting here.  We agree that Clark's situation appears to implicate a scenario not explicitly envisioned by the Sentencing Commission—the Guidelines make no mention of a situation where counts are

not grouped together because they do not involve substantially the same harm but the same conduct triggers an enhancement that is applied to all of the counts. Contrary to the government's position, however, "given our continuing vigilance to avoid double counting, we decline to presume that the Sentencing Commission anticipated the present situation and, through its silence, implicitly approved the use of the same conduct" to enhance Clark's sentence multiples times. *Farrow*, 198 F.3d at 195.

Moreover, the government's argument misunderstands the Sentencing Commission's intent when crafting the grouping scheme. The grouping guidelines were enacted "[i]n order to limit the significance of the formal charging decision and *to prevent multiple punishment for substantially identical offense conduct*." USSG Ch.3, pt.D, intro. comment. (emphasis added). In other words, the Sentencing Commission's grouping guidelines evince an intent to ensure that a defendant's sentence is *not* enhanced based on conduct already factored into the sentencing calculations. Even though the Sentencing Commission did not mention the exact situation implicated in this case, the stated intent of the Sentencing Commission leads to the conclusion that when "the wrong and its victims were the same," as here, if the conduct has already been factored into the defendant's sentence, the conduct "should not" be allowed to further enhance the defendant's sentence. *United States v. Calozza*, 125 F.3d 687, 692 (9th Cir. 1997); *see also United States v. Gutierrez*, 843 F. App'x 60, 63 (9th Cir. 2021) ("*Calozza* makes clear that applying identical sentence enhancements to different offense groups is impermissible where the enhancements address the same harm to the same victim.").

In sum, there is no explicit indication that the Sentencing Commission "intended to attach multiple penalties to the same conduct" merely because counts are not grouped together, *Farrow*, 198 F.3d at 194, and, in fact, the stated intent of the Sentencing Commission's grouping guidelines demonstrates that it would be improper to increase a defendant's sentence based on the same conduct enhancing multiple counts of conviction. Accordingly, because precisely the same two aspects of Clark's conduct factored multiple times into his sentence, we vacate Clark's sentence and remand for resentencing without application of the enhancements under § 3C1.2 and § 2B3.1(b)(3)(C) to all three bank robbery counts.

## III. CONCLUSION

For these reasons, we **VACATE** Clark's sentence and **REMAND** the case to the district court for resentencing consistent with this opinion.