FILED
United States Court of Appeals
Tenth Circuit

September 15, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

    v.

SHELBY WAYNE SELLS,

       Defendant - Appellant.

No. 07-7047

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. 6:03-CR-00069-RAW-SPS-2)**

---

Jill M. Wichlens, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender, with her on the brief), Denver, Colorado, for Defendant-Appellant.

Ryan M. Roberts, Assistant United States Attorney (Sheldon J. Sperling, United States Attorney, with him on the brief), Muskogee, Oklahoma, for Plaintiff-Appellee.

---

Before **MURPHY**, **McKAY**, and **BALDOCK**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I. Introduction

A jury convicted Shelby Sells of conspiring to possess methamphetamine with intent to distribute, in violation of 21 U.S.C. § 846; knowingly maintaining a place for the manufacture, distribution, or use of methamphetamine, in violation of 21 U.S.C. § 856(a)(1); and being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). *United States v. Sells*, 477 F.3d 1226, 1233-34 (10th Cir. 2007) ("*Sells I*"). The district court sentenced Sells to concurrent terms of 240 months on the drug and drug-house convictions and a consecutive term of 120 months on the ammunition conviction, resulting in a total sentence of 360 months' imprisonment. *Id.* at 1234; *see also* U.S.S.G. § 5G1.2(d) (providing that if the bottom of the United States Sentencing Guidelines (the "Guidelines") range is above the statutory maximum on any particular count of conviction, the district court shall run the sentences of separate counts consecutively to the extent necessary to achieve a sentence within the advisory Guidelines range). In arriving at that sentence, the district court attributed to Sells, for purposes of calculating his sentencing range under the Guidelines, all methamphetamine produced by the conspiracy. *Sells I*, 477 F.3d at 1242. This court reversed and remanded the matter to the district court to resentence Sells after first making "particularized findings as to (1) the scope of the criminal activity [Sells] agreed to undertake regarding the conspiracy, and (2) the total amount of drugs involved that were foreseeable to him." *Id.*; *see also* U.S.S.G. § 1B1.3(a)(1)(B). On

-2-

remand, the district court again attributed to Sells all methamphetamine manufactured by the conspiracy, concluding Sells agreed to participate in the entirety of the conspiracy and all drugs associated with the conspiracy were foreseeable by him. Accordingly, the district court reimposed a total term of imprisonment of 360 months. Sells appeals, contending his sentence is both procedurally and substantively unreasonable. Exercising jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291, this court **affirms** the sentence imposed by the district court.

## II. Background

We will not repeat the facts underlying Sells's convictions, as they are detailed in our previous opinion. *Sells I*, 477 F.3d at 1231-34. For purposes of the present appeal, it is sufficient to note a jury found Sells guilty of, *inter alia*, conspiring with his son Anthony, to manufacture, possess, and distribute methamphetamine and maintaining, together with Anthony, a drug house to further those purposes. *Id.* at 1234. In a sentencing proceeding that occurred prior to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the district court sentenced Sells to a 360-month term of imprisonment. *Sells I*, 477 F.3d at 1234. The district court calculated a Guideline range of thirty years to life, based primarily on the entire amount of methamphetamine involved

in the conspiracy. *Id.* at 1234, 1242. Operating under the then-mandatory Guidelines, the court sentenced Sells to thirty years' imprisonment. *Id.* at 1234.

Sells appealed, arguing (1) the district court should not have attributed the entire amount of drugs to him because it made neither a finding about the scope of the criminal activity he personally agreed to undertake nor a finding as to the amount of drugs reasonably foreseeable to him; and (2) constitutional *Booker* error occurred because the district court used judge-found facts to sentence him under the then-mandatory Guidelines. *Id.* at 1242. This court agreed with both contentions, accepting the government's concession that prejudicial *Booker* error occurred and determining the district court failed to make particularized findings as to the scope of the particular criminal activity Sells agreed to undertake or as to the amount of drugs reasonably foreseeable to him. *Id.*; *see also* U.S.S.G. § 1B1.3(a)(1)(B). Accordingly, we reversed and remanded for resentencing. *Sells I*, 477 F.3d at 1242.

Upon remand, Sells filed a series of motions arguing, *inter alia*, that (1) he should only be held responsible under § 1B1.3(a)(1)(B) for those amounts of methamphetamine he personally sold; and (2) the district court should vary downward from the Guidelines sentencing range. As to the question of his responsibility for drug quantities other than those he actually handled, Sells simply argued that because there was no evidence he ever participated in the manufacturing of methamphetamine, he should not be held responsible for the

-4-

drugs manufactured by Anthony. As to the issue of a variance, defense counsel discussed the factors in 18 U.S.C. § 3553(a), placing particular emphasis on Sells's age. He argued a sentence of eleven years was appropriate for a man of Sells's advanced age and that such a sentence would sufficiently protect the public and deter others from committing the same offense. Defense counsel also asserted Sells's prior convictions, which calculated out at a criminal history category of VI under the Guidelines, involved relatively small amounts of drugs.

The probation officer prepared an addendum to the presentence report ("PSR"), responding to Sells's drug-quantity assertions. The probation officer asserted the PSR correctly calculated Sells's offense level by including all amounts manufactured by the conspiracy:

> [Sells] and [Anthony] were involved in a jointly undertaken criminal endeavor involving the manufacture and distribution of methamphetamine. . . . [A] search warrant was executed at the "Sells'[s] property" and from [Sells's] home [] officers recovered items consistent with manufacture of methamphetamine. . . . [Sells] introduced George Hanna to [Anthony] and at the time told Hanna that if he was unavailable, that Hanna could purchase methamphetamine from [Anthony]. Holly Brown, a former girlfriend of [Anthony], testified that she had observed [Anthony] cook methamphetamine on the Sells'[s] property approximately two-hundred times. She further testified that every time [Anthony] manufactured drugs [Sells] would come and collect an amount for distribution. William Keith Edwards testified that [Sells] was often present or nearby when the manufacturing was taking place. [Sells's] and [Anthony's] homes were located on common property, near to one another. [Sells] was aware that methamphetamine was being distributed from the property and[,] based on testimony of Holly Brown, that there were between twenty to twenty-five persons per day visiting [Anthony's] residence. It is unreasonable to believe that

-5-

> [Sells] was not aware and was not involved with the amount of methamphetamine being distributed from Anthony's residence. . . . It is reasonable to believe that he knew or should have known the specifics regarding the total amounts of manufacturing and the volume of distribution within the scope of the overall conspiracy.

In its responsive sentencing memorandum, the government likewise argued that without regard to whether Sells himself engaged in the manufacture of methamphetamine, the manufacturing by Anthony was integral to the conspiracy which Sells joined and was reasonably foreseeable by Sells. In particular, the government noted Sells and Anthony did not have a simple buyer-seller relationship, but instead (1) jointly maintained a place for the manufacture and distribution of methamphetamine, a property owned by Sells; (2) almost every time Anthony manufactured methamphetamine, Sells obtained a portion of the amount manufactured; and (3) Anthony and Sells jointly served customers, demonstrating concerted activity. Because the conspiracy between Sells and Anthony was a joint undertaking to both manufacture and distribute methamphetamine, the government asserted attribution of all drugs to Sells was proper under § 1B1.3(a)(1)(B).

At the sentencing hearing, the district court noted it had "reviewed the opinion by the circuit court and [was] now prepared to resentence [Sells], taking into consideration the advisory guideline sentencing range set forth in the presentence report." In addition, the court stated it had reviewed the following: "There's [defense counsel's] objections, there's his sentencing memorandum,

there's his motion for downward departure, and there's his supplemental motion for downward departure. [The prosecutor] filed a response to [defense counsel's] motion and objections. There's also a second addendum to the presentence report." After resolving several preliminary matters, the district court took up this court's directive to make particularized findings regarding (1) the scope of the criminal activity Sells agreed to undertake, and (2) the amount of drugs that was reasonably foreseeable to him.

The district court began by inviting Sells's counsel to address the issue. Defense counsel merely reiterated the position taken in Sells's written submissions, i.e., because there was no evidence Sells participated in the manufacture of methamphetamine, he should only be held responsible for the amounts he personally distributed. In so doing, Sells relied on a portion of *Sells I* addressing Anthony's claim that his conspiracy conviction was not supported by sufficient evidence. In rejecting Anthony's claim, this court held as follows: "[A] reasonable jury could conclude based on [the evidence adduced by the government] that Anthony had a tacit agreement with [Sells], whereby Anthony manufactured methamphetamine and he and [Sells] would then distribute it." *Sells I*, 477 F.3d at 1236.

The district court rejected Sells's contention that he could not be held responsible for the methamphetamine manufactured by Anthony simply because

he had not actually participated in the manufacturing process. In a lengthy oral ruling on this issue, the district court found as follows:

> In this case, [Sells] and [Anthony] were involved in a jointly-undertaken criminal endeavor involving the manufacture and distribution of methamphetamine.
>
> On July 18, 2003, a search warrant was executed at the Sells'[s] property, property owned by [Sells] only. From [Sells's] home, officers recovered items [consistent] with the manufacture of methamphetamine. These items included glassware and rubber gloves.
>
> Testimony was offered during trial that [Sells] introduced George Hanna to [Anthony] and at the time told Hanna that if [Sells] was unavailable that Hanna . . . could purchase methamphetamine from [Anthony].
>
> Holly Brown, a former girlfriend of [Anthony], testified that she had observed [Anthony] cook methamphetamine on [Sells's] property approximately 200 times. Ms. Brown further testified that every time [Anthony] manufactured drugs, [Sells] would come and collect an amount for distribution.
>
> William Keith Edwards provided testimony that [Sells] was often present or nearby when the manufacturing was taking place.
>
> [Sells's] and [Anthony's] homes were located on common property owned by [Sells]. They were in very close proximity to one another. The two homes, the property itself, was to the court's recollection like a compound, about a ten-acre compound . . . .
>
> [Sells] was aware that methamphetamine was being distributed from the property [] based on the testimony of Holly Brown that there were between 20 to 25 persons per day visiting [Anthony's] residence.
>
> It is unreasonable to believe that [Sells] was not aware and was not involved with the amount of methamphetamine being distributed from Anthony's residenc[e]. This court finds by a preponderance of

-8-

the evidence that [Sells] was a participant in the drug conspiracy in this case and had or should have had full knowledge of the entire amount of illegal drugs involved. . . .

. . . .

. . . [T]he court does find by a preponderance of the evidence that [Sells] was knowingly involved as a co-conspirator in this case along with [Anthony]. This relates both to manufacture and distribution of methamphetamine.

Information was presented during the course of the trial implicating [Sells] in all aspects of the drug-manufacturing and distribution enterprise. . . .

. . . .

This court finds by a preponderance of the evidence that [Sells] is accountable for the entire amount of drugs due to the scope of his agreement with co-conspirators and his involvement with those co-conspirators.

Sells's arguments with respect to the sentencing factors in 18 U.S.C. § 3553(a) were narrow, focusing on his age and criminal history. With regard to his age, Sells argued that even a twenty-year sentence for someone sixty-two years old was "still a horrendous, horrific sentence." With respect to his criminal history, Sells argued that the small amounts of drugs involved in the prior offenses also helped justify a sentence lower than thirty years.

After indicating its awareness of its ability to vary, the court denied Sells's request for a variance, stating: "The court has considered each and all of the factors submitted by the defendant in support of a . . . variance and cannot find that as to each, or any combination thereof, there exists sufficient justification to

warrant a . . . sentencing variance in this case." The court then imposed a

thirty-year sentence. In closing, the district court recited the following:

> In formulating the sentence imposed, this court has considered
> the nature and circumstances of the offense as well as the
> characteristics and criminal history of the defendant. The court has
> further taken into consideration the sentencing guideline calculations
> contained within the presentence report in addition to any objections,
> clarifications, additions, or deletions to those guideline calculations
> identified in the addendum to the report or announced in open court
> today.
>
> While the court recognizes it is not bound by the sentencing
> guideline calculations, the court has considered them and finds them
> to be advisory in nature. The sentence prescribed by this court
> reflects the seriousness of the offense, promotes respect for the law,
> and provides just punishment for the offense. This sentence affords
> adequate deterrence to criminal conduct, protects the public from
> further crimes of this defendant, and provides correctional treatment
> for the defendant in the most effective manner.
>
> The court has further determined that this sentence is
> reasonable for this defendant and the crimes for which he's been
> convicted.

### III. Analysis

*A. Procedural Reasonableness*

*1. Calculation of Sells's Sentencing Guidelines Range*

"In a controlled substances case, a defendant is accountable for all

quantities of contraband with which he was directly involved and, in the case of a

jointly undertaken criminal activity, all reasonably foreseeable quantities of

contraband that were within the scope of the criminal activity that he jointly

-10-

undertook." *United States v. Lauder*, 409 F.3d 1254, 1267 (10th Cir. 2005) (quotation and alterations omitted); *see also* U.S.S.G. § 1B1.3(a)(1)(B). Sells asserts the district court miscalculated his advisory Guidelines range when it attributed to him all methamphetamine manufactured by the conspiracy. In particular, Sells asserts that because he did not personally participate in the manufacture of methamphetamine, he should only be held accountable for those quantities of methamphetamine he personally distributed.

Sells's challenge to the district court's drug-quantity determination is a challenge to the procedural reasonableness of his sentence.[1] *United States v.*

---

[1]In the alternative, Sells attempts to recast this case as one implicating his due process right to be sentenced on the basis of accurate information. *See United States v. Jones*, 640 F.2d 284, 286 (10th Cir. 1981) (holding criminal defendants have a due process right to be sentenced on the basis of accurate information). In support of this assertion, Sells contends the district court found, as a matter of fact, that Sells personally participated in the manufacture of methamphetamine. He further contends the record is devoid of evidence he personally participated in the manufacture of methamphetamine, rendering clearly erroneous the district court's "finding" to the contrary. Rounding out his syllogism, Sells asserts the district court relied on its erroneous "finding" as a part of its sentencing calculus under § 3553(a), denying him his due process right to be sentenced on the basis of accurate information.

In advancing this argument, Sells relies on the district court's statement at sentencing that "[i]nformation was presented during the course of the trial implicating [Sells] in all aspects of the drug-manufacturing and distribution enterprise." Having closely reviewed the sentencing transcript, including the statement identified by Sells, this court cannot agree that the district court made the finding Sells seeks to attribute to it. Instead, taken as a whole, the district court's statements at sentencing make clear it hewed closely to the task this court directed it to undertake in *Sells I*: "make particularized findings as to (1) the scope of the criminal activity [Sells] agreed to undertake regarding the

(continued...)

*Ellis*, 525 F.3d 960, 964 (10th Cir. 2008) (holding a sentence "is procedurally unreasonable if the court . . . improperly calculated[] the Guidelines range" (quotations and alterations omitted)).  In determining whether the district court correctly calculated Sells's advisory Guidelines range, we review the district court's legal conclusions de novo and its factual findings for clear error, giving due deference to the district court's application of the Guidelines to the facts. *United States v. Wolfe*, 435 F.3d 1289, 1295 (10th Cir. 2006).  A district court's determination of the quantity of drugs attributable to a defendant, including the subsidiary questions of whether drugs were reasonably foreseeable to a defendant and within the scope of the jointly undertaken criminal activity, is a determination of fact reviewed only for clear error.  *Lauder*, 409 F.3d at 1267.

Section 1B1.3(a)(1)(B) makes clear that in calculating a defendant's offense level under the Guidelines, a defendant must be held accountable for the conduct of his co-conspirators, including conduct in which the defendant did not

---

[1](...continued)
conspiracy, and (2) the total amount of drugs that were foreseeable to him." *United States v. Sells*, 477 F.3d 1226, 1242 (10th Cir. 2007).  That is, the district court's statements at sentencing can only reasonably be read for the proposition that Anthony's conduct in manufacturing methamphetamine was an essential part of an integrated drug enterprise, that Sells undertook to join the conspiracy fully aware that the manufacture of methamphetamine was integral to the success of the overall conspiracy, and that all of the drugs manufactured by Anthony were foreseeable to Sells.  As set out below, the district court's findings in this regard are all supported by the trial record and, thus, not clearly erroneous.  Because the district court did not make the finding Sells asserts it made, Sells's due process claim necessarily fails.

personally participate, as long as the conduct was within the scope of the jointly undertaken criminal activity and was reasonably foreseeable to the defendant. U.S.S.G. § 1B1.3 cmt. n.2 (describing responsibility of defendants for the conduct of others in cases of jointly undertaken criminal activity); *United States v. Albarran*, 233 F.3d 972, 980 (7th Cir. 2000) ("As a co-conspirator, a defendant can be held accountable for transactions in which he or she did not personally participate if such a deal was reasonably foreseeable to him or her."); *United States v. Carrozza*, 4 F.3d 70, 75 (1st Cir. 1993) ("[Defendant] is potentially liable for the foreseeable criminal acts of others in furtherance of that enterprise even though he did not personally participate in them."). The record here provides ample support for the district court's finding that Anthony's manufacturing activities were within the scope of the criminal activity Sells agreed to undertake and were foreseeable by Sells. George Hanna testified that he met Sells in prison and, after their release, began buying methamphetamine from him. Sells informed Hanna that if he was unavailable, Hanna could purchase methamphetamine from Anthony. Hanna further testified he purchased drugs from both Sells and Anthony from the property owned by Sells. As noted by the government, this evidence demonstrates Sells and Anthony jointly served clients from the pool of drugs manufactured by Anthony. Holly Brown, Anthony's former girlfriend, testified that almost every time Anthony manufactured drugs, Sells would collect an amount to distribute. Furthermore,

the jury convicted Sells of jointly maintaining, with Anthony, a place for the use, manufacture, and distribution of methamphetamine.

The testimony and jury findings set out above are more than sufficient to support the district court's factual finding that Anthony's manufacturing activities were within the scope of the criminal enterprise Sells agreed to undertake and were foreseeable to Sells. *Cf.* U.S.S.G. § 1B1.3 cmt. n.2 ("In determining the scope of the criminal activity that the particular defendant agreed to jointly undertake . . . the court may consider any . . . implicit agreement fairly inferred from the conduct of the defendant and others."). For that reason, Sells's procedural sentencing claim based on the correctness of his advisory Guidelines range fails.

### 2. *Failure to Adequately Address Sells's Variance Request*

A sentencing court is required to "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c); *see also Gall v. United States*, 128 S. Ct. 586, 597 (2007). This requirement is an aspect of procedural reasonableness. *United States v. Romero*, 491 F.3d 1173, 1175-76 (10th Cir.), *cert. denied*, 128 S. Ct. 319 (2007). Although the district court need not "march through [18 U.S.C.] § 3553(a)'s sentencing factors," *United States v. Rines*, 419 F.3d 1104, 1107 (10th Cir. 2005), it "must provide [this court] with a record by which [we] can discern whether the district court considered the

-14-

[§ 3553(a)] factors." *United States v. Traxler*, 477 F.3d 1243, 1249 (10th Cir.), *cert. denied*, 128 S. Ct. 254 (2007).

In his opening brief on appeal, Sells asserted his sentence was procedurally unreasonable because the district court did not adequately address his request for a variance. In particular, Sells asserted he made non-frivolous arguments in support of a downward variance—his age and the assertion his criminal history was not as serious as Guidelines calculations made it appear—which the district court did not specifically address. He recognized, however, that because he did not raise the issue before the district court, he was entitled to relief on this issue only if he could demonstrate the district court committed plain error. *See United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1199 (10th Cir.), *cert. denied*, 128 S. Ct. 113 (2007). Plain error occurs when (1) the district court errs, (2) the error is obvious, and (3) the error affects a defendant's substantial rights. *United States v. Olano*, 507 U.S. 725, 732 (1993). If these three prerequisites are met, this court should exercise its discretion to correct the forfeited error only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

At oral argument and in a post-argument filing, Sells conceded this claim of error is foreclosed by our recent opinion in *United States v. Cereceres-Zavala*, 499 F.3d 1211, 1216-18 (10th Cir. 2007). We agree that *Cereceres-Zavala* forecloses Sells's assertion that the district court committed plain procedural

sentencing error when it failed to offer a detailed explanation of its denial of Sells's request for a downward variance. *Cereceres-Zavala* held that in a run-of-the-mill case involving a sentence within the advisory guidelines range, it is unnecessary for the district court to specifically address on the record, by reference to the factors set out in 18 U.S.C. § 3553(a), a request for a sentence outside the Guidelines range. 499 F.3d at 1216-18. Instead, it is sufficient for the district court to state how it had arrived at the advisory Guidelines range and generally note it had considered in gross the factors set out in § 3553(a). *Id.* at 1217-18; *see also Rita v. United States*, 127 S. Ct. 2456, 2468 (2007) ("Circumstances may well make clear that the judge rests his decision upon the [United States Sentencing] Commission's own reasoning that the Guidelines sentence is a proper sentence (in terms of § 3553(a) and other congressional mandates) in the typical case, and that the judge has found that the case before him is typical.").

Sells's arguments in support of a variance were not complex. Instead, he simply argued that (1) a sentence at the bottom of the Guidelines range was too severe a penalty for a man of his age and (2) his criminal history was not as serious as it might appear at first blush. *Rita*, 127 S. Ct. at 2468-69 (noting the existence of a relationship between the complexity of a case and the obligation of a district court to more extensively detail its sentencing rationale). Before imposing sentence, the district court specifically stated it had considered these

arguments and had concluded they did not justify, either singly or considered together, a downward variance. Furthermore, the sentence ultimately imposed by the district court was based on a correctly calculated Guidelines range, a stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are advisory. In the context of this particular case, the district court's statements are sufficient and Sells's sentence is procedurally reasonable. *See id.* at 2468 (holding that the law vests discretion in a sentencing judge as to how much is necessary to say in explaining the reasons for imposing a particular sentence).

B. *Substantive Reasonableness*

Sells contends his sentence is substantively unreasonable because it is longer than necessary to satisfy the purposes set out in 18 U.S.C. § 3553(a)(2). In particular, Sells argues that because of his age (fifty-nine years old when convicted and sixty-two years old when resentenced), a thirty-year prison sentence is more than is necessary to provide just punishment, deter criminal conduct by others, or protect the public from future criminal acts on his part.

When reviewing a sentence for substantive reasonableness, this court employs the abuse-of-discretion standard. *United States v. Munoz-Nava*, 524 F.3d 1137, 1146 (10th Cir. 2008). That standard requires "substantial deference to district courts." *United States v. Smart*, 518 F.3d 800, 806 (10th Cir. 2008). "A district court abuses its discretion when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable." *Munoz-Nava*, 524 F.3d at

-17-

1146 (quotation omitted). Because the sentence the district court imposed on Sells is within a properly calculated Guideline range, it is entitled to a rebuttable presumption of reasonableness. *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006). The presumption of reasonableness is, however, "a deferential standard . . . [Sells] . . . may rebut by demonstrating that the sentence is unreasonable when viewed against the other factors delineated in § 3553(a)." *Id.*; *Rita*, 127 S. Ct. at 2463 (noting the presumption of reasonableness is not a "strong" presumption).

On appeal, Sells simply asserts his sentence is substantively unreasonable because it is too lengthy in relation to his age. Because Sells will be eighty-eight years old when his sentence expires, he asserts the sentence is longer than necessary to comply with the purposes set out in § 3553(a)(2). *See* 18 U.S.C. § 3553(a) (providing a sentencing court shall impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; adequately deter criminal conduct; protect the public from further crimes of the defendant; and provide the defendant with education training, medical care, or other correctional treatment). In support of his argument, Sells cites to the concurring opinion in *United States v. Pruitt*, 502 F.3d 1154 (10th Cir. 2007), and a dissenting opinion from the Sixth Circuit in *United States v. Eversole*, 487 F.3d 1024, 1036-37 (6th Cir. 2007) (Merritt, J., dissenting).

-18-

In deciding whether to depart from an otherwise applicable Guideline range, a district court is specifically discouraged from considering a defendant's age. U.S.S.G. § 5H1.1. Nevertheless, in deciding whether to vary,[2] pursuant to § 3553(a), from that range, district courts have broad discretion to consider individual characteristics like age. *Gall*, 128 S. Ct. at 601 (holding courts may consider age for variance purposes despite its being a disfavored factor for departure purposes); *see also Muñoz-Nava*, 524 F.3d at 1148–49 (same with regard to employment record). That such a ground for a variance is available certainly does not, however, mean it is compelled. *Cf. United States v. Davis*, No. 05-3784, 2008 WL 3288384, at *6 (6th Cir. Aug. 12, 2008) ("To say that a district court may account for a defendant's age at sentencing, . . . is not to say that [a defendant's age] by itself warrants [a substantial variance].").

The record in this case reveals that Sells is a recidivist, having been convicted in Oklahoma state court of multiple instances of possession of controlled substances with intent to distribute. Despite increasingly severe sentences in state court for those successive convictions, Sells continued to engage in the distribution of controlled substances. As detailed above, the conspiracy underlying the instant convictions involved exceedingly large

---

[2]A departure occurs "when a court reaches a sentence above or below the recommended Guidelines range through application of Chapters Four or Five of the Sentencing Guidelines." *United States v. Atencio*, 476 F.3d 1099, 1101 n.1 (10th Cir. 2007). A variance occurs "[w]hen a court enhances or detracts from the recommended range through application of § 3553(a) factors." *Id.*

quantities of methamphetamine (the equivalent of almost 15,000 kilograms of marijuana) and the maintenance of a place for the manufacture and distribution of that drug. Furthermore, Sells entered into the instant drug conspiracy within a matter of days after being released from Oklahoma state prison on a previous drug-distribution conviction. Finally, Sells engaged in the instant drug conspiracy at the age of fifty-nine. This fact casts significant doubt on Sells's *sub silentio* assertion that a shorter sentence is sufficient to deter future criminal acts on his part because he is unlikely to commit additional crimes due to his age. Based on all of these facts, together with the presumption of reasonableness that attaches to a within-advisory-Guidelines-range sentence, we have no difficulty concluding the refusal to vary downward on the basis of Sells's age was within the wide bounds of the district court's sentencing discretion and the sentence imposed by the district court is substantively reasonable.

This court's decision in *Pruitt* is not to the contrary. Although *Pruitt* recites as a background fact the age of the defendant (she was forty-two years old at the time of sentencing), 502 F.3d at 1156, there is absolutely no discussion in either the majority or concurring opinions of how Pruitt's age affected the substantive reasonableness of her 292-month sentence. This is not surprising since Pruitt did not argue to the district court that a 292-month sentence was substantively unreasonable based on her age at the time of sentencing. *Id.* at 1160 (cataloging arguments made by Pruitt before the district court in support of her

-20-

request for a downward variance). Thus, contrary to Sells's arguments on appeal, *Pruitt* offers no support for his position that his thirty-year sentence is substantively unreasonable based solely on his age.

It is true that Judge Merritt's dissenting opinion in *Eversole* contains language supporting Sells's contention that imposing lengthy sentences on relatively older defendants convicted of drug crimes is substantively unreasonable. 487 F.3d at 1036 (Merritt, J., dissenting) ("I regard a sentence of almost 30 years for this 44-year-old man as an unreasonable life sentence . . . ."). As the basis for his dissent, Judge Merritt asserted that in imposing a sentence within the advisory Guidelines range, the district court erred in striking the balance at sentencing in favor of deterrence and punishment rather than in favor of rehabilitation. *Id.* at 1036-37 (Merritt, J., dissenting); *see also* 18 U.S.C. § 3553(a) (providing that each of these three factors are factors a district court must consider in arriving at an appropriate sentence). Because the Guidelines provisions relating to sentencing for drug crimes did not, in his view, sufficiently contemplate potential mitigating factors in drug cases, and therefore not sufficiently account for the statutory requirement to consider the need to rehabilitate the defendant, Judge Merritt asserted the district court erred in relying on the Guidelines in reaching a sentence. *Eversole*, 487 F.3d at 1036-37 (Merritt, J., dissenting).

The approach advocated by Judge Merritt is, however, clearly at odds with this court's binding precedents. As this court has made clear, "the Guidelines are a factor the district court must consider under § 3553(a)." *United States v. Zamora-Solorzano*, 528 F.3d 1247, 1251 (10th Cir. 2008); *see also* 18 U.S.C. § 3553(a)(4). Thus, even if a district court disagrees with the policy choices underlying the applicable Guidelines, it must still consider the properly calculated Guidelines range in arriving at an appropriate sentence.[3] Equally importantly, both the Supreme Court and this court have made clear that it is not the job of an appellate court to review de novo the balance struck by a district court among the factors set out in § 3553(a). *Gall*, 128 S. Ct. at 597-602; *United States v. Smart*, 518 F.3d 800, 808 (10th Cir. 2008) ("We may not examine the weight a district court assigns to various § 3553(a) factors, and its ultimate assessment of the balance between them . . . de novo. Instead, we must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." (quotation omitted)). Thus, as long as the balance struck by the district court among the factors set out in § 3553(a) is not arbitrary, capricious, or manifestly unreasonable, we must defer to that decision even if we would not have struck the same balance in the first instance. The approach advocated by

---

[3]As noted above, however, the requirement that the district court consider a properly calculated Guidelines range in arriving at an appropriate sentence does not prevent the district court from imposing a sentence outside the advisory Guidelines range if the other factors set out in § 3553(a) call for such a result.

Judge Merritt, which calls for the appellate courts to substitute their views on the proper balance of the factors set out in § 3553(a) for those of the sentencing courts on the front lines, is patently at odds with *Gall* and *Smart* and does not convince this court that Sells's age, standing alone, mandates a lighter sentence.

## IV. Conclusion

For those reasons set out above, the sentence imposed by the United States District Court for the Eastern District of Oklahoma is hereby **AFFIRMED**.