FILED
United States Court of Appeals
Tenth Circuit

May 10, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

KENNETH RAYFORD,

Defendant - Appellant.

No. 10-3291
(D.C. No. 2:09-CR-20143-CM-1)
(D. Kansas)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge, **ANDERSON** and **MURPHY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

On June 21, 2010, defendant and appellant Kenneth Rayford pled guilty to one count of attempted bank robbery, in violation of 18 U.S.C. § 2113(a) and (2); one count of carrying and using a firearm during and in relation to the attempted

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

bank robbery, in violation of 18 U.S.C. § 924(c) and (2); and two counts of aggravated bank robbery, in violation of 18 U.S.C. § 2113(a), (d) and (2). He was sentenced to concurrent 108-month terms of imprisonment on the bank robbery counts and a consecutive 60-month term on the firearm count, for a total of 168 months' imprisonment. Arguing that his sentence is substantively unreasonable, Mr. Rayford appeals his sentence. We affirm.

**BACKGROUND**

The facts relevant to this appeal are not in dispute and do not require lengthy recitation. On December 28, 2007, Mr. Rayford and another individual entered the Hillcrest Bank in Gladstone, Missouri, carrying firearms. At least one of the men pointed his weapon at bank employees and both made threats of harm. They took approximately $23,132 from bank employees.

On March 17, 2008, Mr. Rayford and two other men entered the Enterprise Bank and Trust in Kansas City, Missouri, all carrying firearms. Again, at least two of the men pointed weapons at bank personnel and made threatening remarks. This time, they took approximately $158,077 from bank employees.

Finally, in October 2009, based on intercepted telephone calls obtained pursuant to a court-ordered Title III wiretap, federal and local law enforcement personnel believed that Mr. Rayford, his son Paul Rayford, and Claude White were planning to rob the Interstate Federal Savings Bank in Kansas City, Kansas.

Officers conducted surveillance of Mr. Rayford, and observed him one day as he exchanged vehicles and picked up a black male, later identified as Claude White. After driving to different locations, Mr. Rayford dropped off Mr. White, who got into a car which officers knew had been previously stolen, and then picked up Paul Rayford.[1] Mr. White and Paul Rayford drove to the Interstate Federal Savings Bank with Mr. Rayford following them in a different car. Agents were waiting for the men and had ordered the bank employees to lock the doors to the bank. Mr. White and Paul Rayford attempted to go into the bank, wearing masks and carrying firearms. When they realized the bank doors were locked, they returned to their car. They were ultimately arrested without incident, as was Mr. Rayford, who had remained seated in his car which was parked a little distance away. Two fully loaded firearms were found in Mr. White's car. Paul Rayford was wearing a bullet-proof vest when he was arrested.

As indicated, Mr. Rayford pled guilty. In preparation for sentencing under the advisory United States Sentencing Commission, Guidelines Manual (2009) ("USSG"), the United States Probation Office prepared a presentence report ("PSR"). It calculated a total offense level of 29 for the three bank robbery counts, which, with a criminal history category of I, yielded an advisory sentencing range of 87 to 108 months. The Guidelines sentence for count two,

---

[1]As it turned out, the stolen car had been stored in the yard behind Mr. Rayford's property.

carrying and using a firearm during and relation to a crime of violence, was not less than 60 months, to be imposed consecutively to any other term of imprisonment.

The PSR set out various other factors relating to Mr. Rayford which might warrant an upward or downward departure or variance. Mr. Rayford had prior convictions for murder, armed bank robbery, and aggravated assault, but they were so old that no criminal history points were added on account of them. The PSR noted that the court could "consider the seriousness of these prior convictions [as] a factor that may warrant an upward departure pursuant to [USSG] § 4A1.3(a)(1)." PSR ¶ 134, R. Vol. 3 at 29. The PSR also stated that, in addition to considering Mr. Rayford's prior criminal history, it might also consider his "age and medical condition as a factor when considering if a [downward] variance is warranted." Id. at ¶ 136, id. at 30.

The government filed objections to the PSR, arguing that a two-point enhancement of his base offense level was applicable pursuant to USSG § 3B1.1(c) because Mr. Rayford was a leader/organizer of less than five participants. The government claimed that Mr. Rayford had organized the attempted bank robbery and recruited the others; that he had cased the bank both alone and with his son, Paul; that he initiated the phone calls relating to the robberies and that he made the arrangements to obtain the stolen car.

Mr. Rayford opposed any two-point enhancement, arguing that the three men shared equally in the planning and execution of the robberies. He also objected to any upward departure or variance based on his prior convictions.

On October 13, 2010, the government filed a sentencing memorandum, asserting that Mr. Rayford's prior violent convictions, too old to be counted as criminal history under the Guidelines, nonetheless merited an upward variance. The memorandum quoted at length from a Missouri state appellate court decision's description of a gun battle between Mr. Rayford and a police officer, in which the officer and Mr. Rayford were shot, after which Mr. Rayford escaped from the hospital. The government further asserted that, even though most of Mr. Rayford's prior convictions occurred more than thirty years prior, he committed the three separate robberies at issue in this case while in his late fifties, and therefore could not claim he had outgrown a period of youthful indiscretion. The government accordingly argued that Mr. Rayford's criminal history score vastly under-represented the seriousness of his past conduct.

The government's memorandum also promised that the government would prove, at sentencing, Mr. Rayford's eligibility for a two-point enhancement as leader/organizer, and further argued for a two-point enhancement because Paul Rayford was arrested wearing body armor (the bullet-proof vest).[2] Based on its

_____

[2]Even though the court overruled Mr. Rayford's objection to a two-point enhancement for wearing body armor, and allowed that enhancement, the total

(continued...)

arguments in its sentencing memorandum, the government sought a sentence for Mr. Rayford of 168 months, followed consecutively (as required by statute) by the 60-month sentence for the firearms conviction.

At the sentencing hearing, the government introduced testimony from Kansas City, Missouri, Police Department Detective Joe Daneff, who stated that he had been involved in the investigation of Mr. Rayford, including listening to the wire-tapped phone conversations between Mr. Rayford, his son Paul, and Mr. White. Detective Daneff testified that, based on the phone calls he heard, it appeared Mr. Rayford was organizing the bank robbery of the Interstate Federal Savings bank.

After listening to testimony, evidence and arguments, the district court concluded that the government had proven by a preponderance of the evidence that the two-point enhancement for being a leader/organizer of a group of less than five applied to Mr. Rayford. The court denied Mr. Rayford's objection to the court's consideration of an upward departure or variance based on Mr. Rayford's prior convictions and further denied his objection to the two-level enhancement for the use of body armor.

Mr. Rayford then requested a downward variance from the advisory Guidelines range of 87-108 months. In support of this argument, defense counsel

_____

[2](...continued)
offense level remained the same, with or without that enhancement, because of the grouping rules in the Guidelines.

presented testimony from an actuary, Christopher Hause. He testified that, based on Mr. Rayford's current age and health conditions (fifty-nine-year-old male with high blood pressure, diabetes, and chest pain), he had a life expectancy of approximately 10.9 more years. He argued that a 168-month sentence would be, in effect, a death sentence because he would most likely die in prison.

The government countered this somewhat by noting that the underwriter who had assisted Mr. Hause in his calculations observed that Mr. Rayford would be closely monitored in prison, thereby permitting earlier diagnosis of any health problems.

Mr. Rayford also presented letters from family members, who stated that he was a wonderful father and family man. His counsel also reminded the court that Mr. Rayford had ceased committing crimes for a long time before engaging in the instant robberies, and that he had educated himself and obtained an advanced degree in the interim.

The government continued to argue about Mr. Rayford's serious prior criminal history, which, it asserted, should really merit a criminal history category of V. The government also reminded the court of the seriousness of the current crimes of conviction, involving brandishing firearms around innocent people in the banks. This, combined with his prior convictions for murder, bank robbery and aggravated assault, all suggested to the government a man of continuing danger and violence. Accordingly, the government requested an

upward departure based on the under-representation of the seriousness of his criminal history.

Before announcing its sentence of 168 months, the court explained as follows:

> Some of your comments indicated that possibly because of your race, you've had a difficult life, that you've been under a great deal of pressure throughout your life. . . . [B]ut what I saw in your presentence investigation report through your own self-reporting is that you believed that you were in a good family home environment when you were growing up, that you believed your parents were good role models for you, that they provided for you . . . . The stresses that you may have had from lack of finances or money, that has to be balanced out by [the fact that] within the recent five to 10 years, your checking account does not reflect a person who is struggling financially.

Tr. of Sentencing Hr'g at 119-120, R. Vol. 2 at 163-64. The court then alluded to the fact that his reported adjusted income from the past years almost always reflected some significant gambling winnings, and noted that "change[s] in your checking account from $150,000 to $50,000 . . . to support a gaming lifestyle, was a choice that was made, . . . [and] there's some consequences when that's not able to be controlled." Id. at 120, id. at 164.

The court subsequently stated there were legitimate reasons for the government's argument that the seriousness of his criminal history was under-represented:

> What did not help your situation is the fact that when you were released and maintained a lawful lifestyle for a time, when you chose to re-offend, you did it not on one occasion, but on multiple

occasions involving a crime that carries with it great risk and harm to others besides yourself, but to the general public.

Id. at 121, id. at 165. Nonetheless, the court rejected the government's request for an upward departure, and it turned to Mr. Rayford's request for a downward "variance." The court considered the arguments about his age and health needs, and ultimately concluded:

> [I]t appears[] that there's two different people . . . involved over these past years . . . that at different times, a different person has emerged. In the end what the court would find is that . . . it's not a different person. It's been one person. It's been you. At different times, there's been different choices made by you. Maybe your personality was different on different occasions. But in the . . . end, you made these choices. This particular crime had great risk and danger to innocent people including your son, and for those reasons the court after review does not believe a downward departure would be appropriate.

Id. at 122, id. at 166.

The court then pronounced the 168-month advisory Guidelines sentence, followed by three years of supervised release. The district court also explained its sentence by reference to the factors contained in 18 U.S.C. § 3553(a).

Mr. Rayford immediately objected to the procedural and substantive reasonableness of the sentence. This appeal followed, in which Mr. Rayford only challenges the substantive reasonableness of his sentence.

## DISCUSSION

We review the substantive reasonableness of a defendant's sentence for abuse of discretion.  See United States v. Mancera-Perez, 505 F.3d 1054, 1058 (10th Cir. 2007).  Under this deferential standard, we may overturn Mr. Rayford's sentence only if the district court's decision was "arbitrary, capricious, whimsical, or manifestly unreasonable."  United States v. Friedman, 554 F.3d 1301, 1307 (10th Cir. 2009) (quotation omitted).  Thus, we must determine whether Mr. Rayford's sentence is reasonable "given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)."  Id. (quotation omitted).

Additionally, we bear in mind that a sentence imposed within the properly calculated advisory guideline range is entitled to a rebuttable presumption of reasonableness."  United States v. Alvarez-Bernabe, 626 F.3d 1161, 1165 (10th Cir. 2010).  Mr. Rayford explicitly only challenges the substantive reasonableness of his sentence.

Mr. Rayford's primary argument for the unreasonableness of his sentence is that, given his age (60) and his health needs (high blood pressure, diabetes and chest pains), he will not outlast a 168-month sentence and will die in prison.  He is, he claims, in essence sentenced to death.

As we have recently noted, when deciding "whether to depart from an otherwise applicable Guideline range, a district court is specifically discouraged from considering a defendant's age."  United States v. Sells, 541 F.3d 1227, 1237

(10th Cir. 2008) (citing USSG § 5H1.1). That is not necessarily the case when a district court is deciding whether to vary, pursuant to 18 U.S.C. § 3553(a), from an applicable Guideline range. Rather, in deciding whether to vary, "district courts have broad discretion to consider individual characteristics like age." Id. at 1238 (citing Gall v. United States, 552 U.S. 38, 58 (2007)).[3] Mr. Rayford asks us to find his sentence unreasonable because the district court failed to vary, based on the § 3553(a) factors, and, in particular, because of his age and poor health.

In this case, the district court carefully considered all the § 3553(a) factors in imposing its sentence on Mr. Rayford. It noted that, after committing very brutal and violent crimes as a young man, Mr. Rayford enjoyed a long period of calm, non-criminal conduct. Nonetheless, in his late 50's, Mr. Rayford committed three armed robberies (or, in the case of one, an attempted armed robbery), over a three-year span. As we stated in Sells, "[t]his fact casts significant doubt on [Mr. Rayford's] *sub silentio* assertion that a shorter sentence is sufficient to deter future criminal acts on his part because he is unlikely to commit additional crimes

---

[3]As we have explained,

> A departure occurs when a court reaches a sentence above or below the recommended Guidelines range through application of Chapters Four or Five of the Sentencing Guidelines. A variance occurs when a court enhances or detracts from the recommended range through application of § 3553(a) factors.

Sells, 541 F.3d at 1237 n.2 (citations and quotations omitted).

due to his age." Sells, 541 F.3d at 1238. We therefore have no difficulty concluding that, in the exercise of its wide discretion, the district court correctly determined not to vary downward based on Mr. Rayford's age and health.

Furthermore, "both the Supreme Court and this court have made clear that it is not the job of an appellate court to review de novo the balance struck by a district court among the factors set out in § 3553(a)." Id. at 1239 (citing Gall, 552 U.S. at 51-53). Indeed, the Supreme Court has continually reminded us that "[d]istrict courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines sentences than appellate courts do." Gall, 552 U.S. at 52 (quoting Koon v. United States, 518 U.S. 81, 98 (1996)).

In short, we can find no fault with the district court's sentence in this case. Mr. Rayford has not rebutted the presumption of reasonableness attached to it.

## CONCLUSION

For the foregoing reasons, we AFFIRM the sentence in this case.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge

-12-