FILED
United States Court of Appeals
Tenth Circuit

March 27, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

NEMACEO MOLINA,

Defendant - Appellant.

No. 17-6222
(D.C. No. 5:17-CR-00026-F-1)
W.D. Okla.

**ORDER AND JUDGMENT**[*]

Before **BACHARACH**, **MURPHY**, and **MORITZ**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to honor the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is, therefore,

submitted without oral argument.

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

## I.    Introduction

Appellant Nemeceo Molina pleaded guilty to one count of assault with a dangerous weapon within Indian country, in violation of 18 U.S.C. §§ 113(a), 1153(a).  The district court sentenced him to 120 months' imprisonment, a sentence forty-two months higher than the top of the advisory guidelines range.  Molina appeals his sentence, arguing it is substantively unreasonable.  Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm Molina's sentence.

## II.    Background

In 2017, Molina was charged in a three-count indictment with the following crimes: assault with a dangerous weapon (Count 1), assault resulting in serious bodily injury (Count 2), and kidnapping in Indian Country (Count 3).  Pursuant to the terms of a written plea agreement, Molina pleaded guilty to Count 1 and the government moved to dismiss Counts 2 and 3.  After the plea was entered, a Presentence Investigation Report was prepared.  It described the offense conduct as follows.[1]

> On December 13, 2016, . . . [victim] was at a friend's house in Ponca City when her boyfriend, Nemaceo Molina, arrived at the friend's residence and asked her to give him a ride to White Eagle. She agreed, and they got in her car and started traveling toward White Eagle.  Molina was drinking vodka as [victim] was driving. At some point during the trip, Molina made [victim] switch places with him, and he began driving.  He then started questioning her

---

[1]Molina did not object to the PSR's factual recitation.

about a mutual male friend, L.V., and accused her of cheating on him. Molina then pulled out a knife and threatened to kill [victim], while demanding that she tell him the truth about her relationship with L.V. Molina then drove down a dirt road in an isolated area, stopped the vehicle, and while holding the knife, ordered [victim] to get out of the vehicle. [Victim] exited the vehicle. Molina then made her undress fully, and forcefully shoved her into the trunk of her vehicle.

Once [victim] was in the trunk, Molina got back in the vehicle and started driving. [Victim] was able to locate a shirt and a pair of underwear in the trunk, and put them on. Molina then stopped the vehicle in an area near an oil tank battery, where he saw a man standing outside shooting a firearm for target practice. . . . While Molina was talking to the man, [victim] was able to push down the rear seat of the vehicle from inside the trunk, got into the rear seat of the vehicle, and then exited the car. The man saw [victim] and immediately got into his car and left the area. Molina, who had been standing near the other man's vehicle, came back over to [victim's] vehicle and was very angry. He told [victim] (who had heard at least one gunshot while trapped in the trunk) that the man was there to shoot her. Molina then forced [victim] back into the trunk at knifepoint. Once she was inside the trunk, he tied the rear seat to where it could not be pushed forward again. Molina then started driving again.

Upon reaching a wooded area near another oil tank battery, Molina stopped the vehicle and pulled [victim] out of the trunk. Molina began hitting her with his fists, again accusing her of infidelity with L.V. Between beatings, Molina told [victim], "I'm the devil and I'm going to kill you." Molina threw all of [victim's] clothing and other items from the vehicle on the ground, and ordered her to face away from him. In fear that he would kill her when she looked away, [victim] refused to turn away. Molina then spit in her face and pushed her to the ground. He hit her head and body multiple times and then pushed his boot against her throat, pressing hard while threatening to kill her. [Victim] repeatedly attempted to get away from Molina, but each time he would catch up to her and continue beating her. She reported that he began hitting her with two logs that were about 1-2' long and 4" thick. At one point while she was trying to run away, Molina hit her hard in the back of the head

-3-

with one of the logs, and she blacked out. When she regained awareness, Molina was still beating her with a log and his fists. He then got into [victim's] car and drove away, leaving her naked and badly injured. The beating lasted approximately an hour before he left. As Molina was driving away, he stopped briefly in the middle of the road. [Victim] saw the vehicle stop and thought Molina was going to turn around and come back to kill her, but then saw him throw the rest of her personal items out on the road and continue to drive away.

[Victim] began walking through the fields next to the woods in search of help, and eventually reached a residence approximately a mile away. During this time, the outside temperature was below freezing, and [victim] was injured and completely naked. As she approached the residence, the homeowners saw her outside and came outside to help her. They wrapped her in a blanket, placed her in their car, and took her to the emergency room.

Upon reaching the hospital . . . [victim's] core body temperature was only 95.2 degrees. . . . She had a 4 centimeter laceration on her head, which was closed with staples. An x-ray showed a fractured radius in her left arm near the wrist; however, the radiologist was not able to determine the age of the fracture. Her hand and wrist on that arm had swelling and significant bruising. Photographs taken by investigators show that [victim] had significant scrapes, cuts, and bruising all over her body, including cuts on the bottom of her feet from walking barefoot to reach help. [Victim] also disclosed that Molina had assaulted her a few days before and injured her ribs.

The PSR calculated Molina's base offense level at fourteen by applying USSG § 2A2.2(a). The PSR recommended the following adjustments to the base offense level: a two-level increase because the assault involved more than minimal planning, a four-level increase because a dangerous weapon was used, a five-level increase because the victim sustained serious bodily injury, and a three-level reduction for acceptance of responsibility. These adjustments resulted in a total

-4-

offense level of twenty-two. Molina's total criminal history score established a criminal history category of IV. The total offense level of twenty-two combined with a criminal history category of IV resulted in an advisory guidelines range of sixty-three to seventy-eight months' imprisonment. The statutory maximum penalty was 120 months. *See* 18 U.S.C. § 113(a)(3).

Molina objected to the PSR's recommendation that his base offense level be increased because he engaged in more than minimal planning. He asserted the "crime was a series of spontaneous events." Molina also challenged the more-than-minimal-planning enhancement in a written memorandum he filed prior to sentencing.

At the sentencing hearing, the district court adopted the PSR in its entirety, including the recommendation on the more-than-minimal-planning enhancement.[2] Rejecting Molina's request for a within-guidelines sentence, the district court imposed a 120-month sentence stating, in part:

> Mr. Molina, you deserve a ten-year sentence and that's what you're going to get. The sheer viciousness of your assault on this helpless woman is—makes your crime one of the most appalling I've seen in nearly 16 years on the bench. Not only sheer viciousness, but persistent viciousness.

Molina appeals, arguing his sentence is substantively unreasonable.

---

[2]Molina has not appealed from this ruling because such a challenge is precluded by the terms of his plea agreement.

**III. Discussion**

This court reviews the substantive reasonableness of Molina's sentence under the abuse-of-discretion standard. *United States v. Steele*, 603 F.3d 803, 809 (10th Cir. 2010). "Substantive reasonableness involves whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Conlan*, 500 F.3d 1167, 1169 (10th Cir. 2007). When reviewing Molina's sentence, we "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall v. United States*, 552 U.S. 38, 51 (2007). "[A]s long as the balance struck by the district court among the factors set out in § 3553(a) is not arbitrary, capricious, or manifestly unreasonable, we must defer to that decision even if we would not have struck the same balance in the first instance." *United States v. Sells*, 541 F.3d 1227, 1239 (10th Cir. 2008).

The district court supported its decision to vary upward by referring to the statutory punishment factors set out in § 3553. It relied heavily on the nature and circumstances of the offense, the need to reflect the seriousness of the criminal conduct, the need to impose just punishment, and the need for incapacitation. It justified the upward variance by noting the "viciousness" of Molina's behavior, including the fact he planned the assault in advance, perpetrated the assault methodically, and abandoned the victim in a rural area in sub-freezing weather after the assault. The district court concluded a lengthy term of incarceration was

necessary to prevent Molina from committing additional crimes and to punish him for his offense conduct, stating: "You viciously attacked a woman who was essentially defenseless to begin with and you made her in a very wanton, cruel way, even more defenseless. A person who is capable of doing that needs to go away for a long time."

On appeal, Molina argues his history and characteristics militate against the sentence imposed by the district court. He asserts he was raised by a single mother and dropped out of school in the tenth grade. He was only twenty-one when he committed the crime of conviction and lacks coping skills. He further asserts he has a history of substance abuse and is in need of treatment. He contends a sentence within the advisory guidelines range would permit him to complete his GED and participate in substance abuse treatment. As to the nature and circumstances of the offense conviction, Molina argues his criminal conduct was fully taken into account by the Guidelines. Finally, he argues he is being prosecuted on numerous state criminal charges which will likely result in further incarceration.

We conclude the district court did not abuse its discretion when it varied upward to a 120-month sentence. Although Molina identifies factors that could support a within-guidelines sentence, the record supports the district court's characterization of his assault crime as involving exceptionally cruel conduct. Accordingly, the district court did not act unreasonably when it imposed a variant

sentence based on its conclusion a lesser sentence was inadequate to punish

Molina for the offense or protect the public from further crimes.

## IV.    Conclusion

Molina's sentence is **affirmed**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge